# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETTY YEE, Controller, State of California,<br><br>*Plaintiff*,<br><br>v.<br><br>SALLY JEWELL, Secretary, United States Department of the Interior,<br><br>*Defendant*. | Civil Action No. 16-490 (RDM) |

## MEMORANDUM OPINION AND ORDER TO SHOW CAUSE

The State of California brings this breach-of-contract suit against the United States Department of the Interior. The complaint identifies two bases for this Court's jurisdiction: the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus Act, 28 U.S.C. § 1361. *See* Dkt. 1 at 1 (Compl. ¶ 2). The Department has moved to dismiss the complaint on the grounds that neither statute confers subject-matter jurisdiction here. Dkt. 7. California has also cross-moved for summary judgment. Dkt. 9.

The Department is correct that the Declaratory Judgment Act is not jurisdiction-conferring, and, although the Mandamus Act can supply subject-matter jurisdiction in exceptional circumstances, the Court is not persuaded (at least on the present record) that this is such an occasion. But, because California's claim arises under federal law, the Court concludes that it has subject-matter jurisdiction under 28 U.S.C. § 1331. The Court will, accordingly, deny the Department's motion to dismiss.

The more pertinent question—and the question that neither party has raised—is whether Congress has waived the sovereign immunity of the United States for present purposes.

"Sovereign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and this Court "ha[s] an obligation to address jurisdictional questions *sua sponte*," *United States v. Baucum*, 80 F.3d 539, 541 (D.C. Cir. 1996).  As explained below, there is a significant question whether Congress has consented to government contract suits like this one in federal district court and whether this case should be transferred to the United States Court of Federal Claims as a result.  The Court, accordingly, will deny California's summary judgment motion without prejudice as premature, and will order the parties to show cause why the case should not be transferred to the Court of Federal Claims or dismissed on grounds of sovereign immunity.

## I. BACKGROUND

### A. Regulatory Background

The Department of the Interior may lease federal lands to private parties for the production of oil and gas.  30 U.S.C. § 226.  Lessees must then pay the Department royalties for any oil or gas produced.  *Id.* § 226(b)(1)(A).  And, to "accurately determine" the amount of those royalties, the Department must "establish a comprehensive inspection, collection, and fiscal and production accounting and auditing system."  *Id.* § 1711(a).

Under the Federal Oil and Gas Royalty Management Act ("FOGRMA"), the Department may then delegate its royalty-auditing duties to the leased lands' host state, *id.* § 1735(a), by means of a "cooperative agreement," *id.* § 1732(a).  "Cooperative agreements" are legal instruments defined by statute.  *See* 31 U.S.C. § 6305.  They memorialize "relationship[s] between the United States Government and a State," where "the principal purpose of the relationship is to transfer a thing of value to the State . . . to carry out a public purpose," and "substantial involvement is expected" between governments.  *Id.*

Under the Department's FOGRMA regulations, such cooperative agreements may obligate the Department to reimburse the state "for up to 100 percent of the [eligible] costs of eligible activities," 30 C.F.R. § 1228.105(a)(1), where "eligible activities" are those activities agreed upon each year by the parties, *id.*, and "eligible costs" are the costs "directly associated" with those activities, *id.* § 1228.107. Eligible costs include payment of salaries and benefits, travel and training costs, administrative expenses, and other costs "which can be shown to be in direct support of the activities covered by the agreement." *Id.* That reimbursement, however, "may not exceed the reasonably anticipated expenditures that [the Department] would incur to perform the same function," *id.* § 1227.112(b), and must be "necessary for" and "directly related to [the state's] performance of a delegated function," *id.* § 1227.112(c).

If the cooperative agreement provides for reimbursement, it must "contain detailed schedules identifying those activities and costs which qualify." *Id.* § 1228.107. Each calendar quarter, the state must submit to the Department a "voucher for reimbursement of eligible costs incurred," *id.* § 1228.105(c), which the Department then pays using "appropriations specifically designated for th[at] purpose," *id.* § 1228.105(b).

**B.    Factual Background**

In September 2010, the Department and California entered into a FOGRMA cooperative agreement ("the Agreement"). Dkt. 7-2 at 2. The Agreement delegated certain royalty-auditing duties to California for the period from October 1, 2010, to June 30, 2016, Dkt. 7-2 at 2, and as such the Agreement has now expired. The Agreement also provided that the Department would "reimburse the State up to 100 percent of allowable costs . . . not to exceed the amount approved for each fiscal year of this Agreement . . . and contingent upon appropriation of funds by Congress." *Id.* at 6.

At issue here is Agreement Paragraph 6.5.C, which provided for reimbursement of the costs of California's employees' fringe benefits. *See* Dkt. 1 at 2 (Compl. ¶ 7); Dkt. 7-2 at 16. "Fringe benefits" are "allowances and services provided by employers to their employees as compensation in addition to regular salaries and wages." *Cost Principles for State, Local, and Indian Tribal Governments (OMB Circular A-87)*, 70 Fed. Reg. 51,910, 51,914–15 (Aug. 31, 2005). Paragraph 6.5.C of the Agreement stated that "[f]ringe benefits shall be allowed in accordance with the State's established accounting system." Dkt. 7-2 at 16 (Agreement ¶ 6.5.C).

In July 2015, the Department took issue with California's method of calculating its salaries, fringe benefits, and other indirect costs. Dkt. 1 at 2–3 (Compl. ¶ 8). It sent California a draft "Attestation Report," Dkt. 9-4, which took the view that, broadly speaking, California had sought and obtained reimbursement based on its employees' "*theoretical* or *estimated* working hours," rather than their "[*a*]*ctual* working hours," *id.* at 4.[1] The Report concluded that, between October 2010 and September 2014, California had overcharged the Department by $296,459.94. *Id.* at 8. California objected, *see* Dkt. 9–5, but the Department issued a final report declining to change its position, *see* Dkt. 7-4 at 11–12.

In its final report, the Department stated that it would recover the missing $296,459.94 by withholding monies from California's future FOGRMA vouchers. *Id.* at 12. That is, for each of the twelve monthly vouchers covering the period from July 2015 to June 2016, the Department would subtract $24,705 from the amount California would otherwise have received, thereby recuperating the missing amount. *Id.* In addition, the Department stated that it would "make a one-time adjustment to recover overstated costs" for fiscal year 2015 by withholding an

---

[1] Although the exact details of the accounting dispute are not necessary to this opinion, they are difficult to discern from the current record. The Attestation Report makes frequent reference to attached spreadsheets, *see* Dkt. 9-4 at 4–5, which neither party has provided.

additional $1,845.71 from the July 2015 voucher. *Id.* at 12–13. Finally, the Department requested that California adopt the Department's preferred method for calculating costs for the remaining months on the contract, *id.* at 10, although it is unclear whether California did so.

## C.    The Present Proceeding

After pursuing an unsuccessful administrative appeal, Dkt. 1 at 3 (Compl. ¶¶ 11–12); *see* Dkt. 7-2 at 18 (Agreement ¶ 7.5); Dkts. 9-7 & 9-8, California filed suit in this Court. It alleges that the Department breached Paragraph 6.5.C by "unilaterally substituting its own method of calculating overhead in lieu of [California's preferred method]." Dkt. 1 at 4 (Compl. ¶ 13). It seeks (1) a declaratory judgment that the Department breached the Agreement; (2) an injunction requiring the Department to "abandon its $296,459.94 claim against [California] and any future such claims" under the Agreement; (3) an injunction requiring the Department to "repay any money withheld because of [the Department's] erroneous interpretation"; and (4) costs. *Id.* at 4. Assuming that the Department followed through on its threat to withhold money, California's requested relief would require the United States to pay California more than $298,000.

## II.    ANALYSIS

The Department has moved to dismiss for lack of subject-matter jurisdiction, Dkt. 7, and California has cross-moved for summary judgment, Dkt. 9. For the reasons explained below, the Court will deny both motions and order the parties to show cause why the case should not be transferred to the U.S. Court of Federal Claims or dismissed on sovereign immunity grounds.

## A.    Subject-Matter Jurisdiction

In suits against the government, subject-matter jurisdiction turns on at least "two different jurisdictional questions." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006). First, has Congress provided an affirmative grant of subject-matter jurisdiction? And, second, has

Congress waived the United States's immunity to suit? *See id.* at 185; *Transohio Savings Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 606 (D.C. Cir. 1992). Only if Congress has done both may this Court reach the merits.

1. *Affirmative Grant of Subject-Matter Jurisdiction*

The Department trains its arguments on only the first question, *i.e.*, whether a statute provides an affirmative grant of subject-matter jurisdiction. In particular, it challenges the jurisdictional statement in California's complaint, in which California asserts that jurisdiction is proper under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus Act, 28 U.S.C. § 1361. *See* Dkt. 1 at 1 (Compl. ¶ 2). The Department's motion argues that neither statute creates jurisdiction in this case. *See* Dkt. 7.

As an initial matter, the Department is clearly correct that the Declaratory Judgment Act does not supply jurisdiction here; simply put, the Declaratory Judgment Act is not a jurisdiction-conferring statute. Dkt. 7-1 at 7 n.3; *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Whether the Mandamus Act confers jurisdiction on these facts is less obvious, but the answer is likely the same. A number of decisions cast doubt on the proposition that the Mandamus Act creates jurisdiction for district courts to compel specific performance of government contracts. *E.g.*, *Blaney v. United States*, 34 F.3d 509, 514 (7th Cir. 1994); *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 860 (Fed. Cir. 1992); *White v. Adm'r of Gen. Servs. Admin.*, 343 F.2d 444, 447 (9th Cir. 1965) ("To find in § 1361 such a revolutionary step on the part of Congress as the overturning of what had been settled law since the foundation of the Government, i.e., that the courts do not have jurisdiction to order the Government to specifically perform its contracts, would be to make too much of a short and simple piece of legislation."). And it has long been settled that the Mandamus Act is a law of last resort, available "only if [the

plaintiff] has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  It is thus doubtful that California can meet the stringent standard for establishing mandamus jurisdiction.

The Court need not resolve that question, however, because this case falls within the general grant of jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[F]ederal common law of contracts applies to contracts with the federal government, and federal common law is part of the 'laws . . . of the United States' for the purpose of § 1331 jurisdiction."  *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985) (second alteration in original) (citation omitted) (citing *Illinois v. Milwaukee*, 406 U.S. 91, 100 (1972)); *accord, e.g.*, *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 180 (D.D.C. 2007).  The fact that the contract at issue here purports to allow fringe benefits "in accordance with the State's established accounting system," Dkt. 7-2 at 16, moreover, does not change this conclusion; even where federal law borrows from state rules or procedures, it remains federal law.  *Cf. United States v. Sharpnack*, 355 U.S. 286, 294–95 (1958) (holding that Congress does not impermissibly "delegat[e] . . . its legislative authority to the States" when it incorporates state laws into federal law).  As such, § 1331 contains the requisite jurisdictional grant, and the Department's arguments pose no bar to this suit.  The Court, accordingly, will deny the Department's motion.

    2.  *Waiver of Sovereign Immunity*

The Court has an independent duty, however, to address the second jurisdictional question, *i.e.*, whether a statute has, in relevant respects, unambiguously waived the sovereign immunity of the United States.  *See FDIC*, 510 U.S. at 475.  The parties have not addressed this issue, although California has hinted that it intends to rely on the waiver of sovereign immunity

found in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. *See* Dkt. 8 at 3. That section provides in relevant part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. *Provided*, That . . . [n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. Importantly, this waiver applies to *any* suit that meets its conditions, "whether under the APA or not." *Trudeau*, 456 F.3d at 186. As such, the waiver of sovereign immunity contained in § 702 might apply to California's claim for breach of contract under the federal common law of contract, but only if (1) California is "seeking relief other than money damages" and (2) no other statute "impliedly forbids the relief which is sought."

Starting with the question whether the complaint seeks "relief other than money damages," one might at first blush think that the plain language of the complaint provides a ready answer: among other things, the complaint seeks an order compelling the Department to "repay any money withheld" from the contractually-required payments "because of [the Department's] erroneous interpretation of the Agreement." Dkt. 1 at 4. But, as the Supreme Court has explained, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief" at issue "as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Rather, "money damages" are distinct from "specific relief," even when the award of "specific relief" includes an order directing the payment of money. *Id.* at 900. "Damages are given to the plaintiff to *substitute* for a suffered loss," while specific relief "attempt[s] to give the plaintiff the very thing to which he was entitled." *Id.* at 895 (internal quotation mark omitted) (quoting D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)). For this reason, it is not uncommon for courts to award "monetary

8

relief under a contract" in "equitable actions." *Id.*; *see also Transohio Savings Bank*, 967 F.2d at 608.  Here, California endeavors to cast its complaint as one for "declaratory and injunction relief," Dkt. 1 at 1 ("Complaint for Declaratory and Injunctive Relief"), as opposed to a complaint for damages resulting from a breach of contract.  But, because the Department has not addressed this question, the Court will refrain from deciding whether the complaint is one for "money damages" within the meaning of § 702.

As to the "impliedly forbids" prong of § 702, California's chief obstacle is the Tucker Act, 28 U.S.C. §§ 1346, 1491.  The Tucker Act waives sovereign immunity for actions "founded upon . . . any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983), but only for suits brought in the U.S. Court of Federal Claims.  The one exception is the provision commonly known as the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), which allows such suits to proceed in district courts, instead, provided the amount in controversy is no greater than $10,000.[2]  Whether the Tucker Act "impliedly forbids" the application of § 702 to California's breach of contract claim is a potentially complex question, as the doctrinal history reflects.

Initially, the D.C. Circuit held that the Tucker Act provided the "exclusive" waiver of sovereign immunity for "cases against the United States based on contracts." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 & n.2 (D.C. Cir. 1985); *accord Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).  On that line of reasoning, "[t]he waiver of sovereign immunity in the Administrative Procedure Act does not run to actions seeking declaratory relief or specific performance in contract cases, because that waiver is by its terms inapplicable if 'any

---

[2] The Little Tucker Act appears inapplicable here because California seems to be seeking more than $10,000.

other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' and the Tucker Act and Little Tucker Act impliedly forbid such relief." *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.) (quoting 5 U.S.C. § 702). Thus, "[t]he *sole* remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1), or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2)." *Id.* (emphasis added).

*Bowen v. Massachusetts* arguably challenged this understanding. *Bowen* was not a contract case, but concerned the Medicaid program—"a cooperative endeavor" between the federal government and the states. 487 U.S. at 883. The State of Massachusetts claimed that the Department of Health and Human Services owed it millions of dollars that had been erroneously withheld under the program. *Id* at 887. The Supreme Court rejected the argument that the Court of Federal Claims had "exclusive jurisdiction" over the action. *See id.* at 890, 910 n.48. Instead, it held that jurisdiction was proper in the district court because (1) the claim was not seeking "money damages" within the meaning of § 702, *id.* at 893, and (2) the Tucker Act did not provide an "adequate remedy" within the meaning of 5 U.S.C. § 704, *id.* at 904.[3] The Court did not address the preclusion language in § 702. It did, however, expressly reject the notion that the jurisdiction of the Court of Federal Claims was exclusive:

> It is often assumed that the [Court of Federal Claims] has exclusive jurisdiction of Tucker Act claims for more than $10,000. . . . That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the [Court of Federal Claims]. Rather, that court's jurisdiction is "exclusive" only to the extent

---

[3] § 704 provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." But § 704 is not part of the APA's waiver of sovereign immunity; it merely sets forth requirements for stating an APA cause of action, *Trudeau*, 456 F.3d at 183–84 & n.5, which California's complaint does not purport to do.

>that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court. If however, § 702 of the APA is construed to authorize a district court to grant monetary relief—other than traditional "money damages"—as an incident to the complete relief that is appropriate in the review of agency action, the fact that the purely monetary aspects of the case could have been decided by the [Court of Federal Claim] is not sufficient reason to bar that aspect of the relief available in a district court.

*Id.* at 910 n.48.

In the wake of *Bowen*, the D.C. Circuit revisited the question whether the Tucker Act provides an exclusive remedy—and thus impliedly forbids the application of the waiver of sovereign immunity contained in § 702—for breach of contract claims against the federal government. In doing so, the Court of Appeals recognized the "strong case that, after *Bowen*, the Tucker Act should not be read to 'impliedly forbid' under the APA the bringing in district court of contract actions for specific relief." *Transohio Savings Bank*, 967 F.2d at 612. But, because "*Bowen* did not involve a contract and did not address the 'impliedly forbids' limitation on the APA's sovereign immunity," the Court of Appeals "decline[d] to overrule [its] very specific holdings that the APA does not waive sovereign immunity for contract claims seeking specific relief." *Id.* at 613. Thus, it held that "if the case before us is a 'contract case,' the APA does not waive the sovereign's immunity from suit." *Id.* at 609.

Since then, the D.C. Circuit has consistently held that an action must be brought under the Tucker Act in the Court of Federal Claims if, "in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government," *Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995), if it "is essentially a contract action," *Albrecht v. Comm. on Employee Benefits*, 357 F.3d 62, 68 (D.C. Cir. 2004), and if the Court of Federal Claims would have jurisdiction over the matter, *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176–77 (D.C. Cir. 2006). The first requirement is satisfied if the complaint seeks more than $10,000

11

in "monetary relief"—a concept distinct from "money damages" in the sense of *Bowen*. *See Schwalier v. Hagel*, 734 F.3d 1218, 1220–21 (D.C. Cir. 2013); *see also Bowen*, 487 U.S. at 900 n.31. The second requirement is satisfied if the claim "turns *entirely* on the terms of a contract," *Albrecht*, 357 F.3d at 69, as opposed to being a "statutory or constitutional claim[]," *Transohio*, 967 F.2d at 610. And the third requirement stems from the D.C. Circuit's decision in *Tootle v. Secretary of the Navy*, 446 F.3d 167 (D.C. Cir. 2006), where it "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims."

To afford the parties an opportunity to address these issues, the Court will order them to show cause why this action should not be dismissed on grounds of sovereign immunity. The parties, accordingly, shall submit additional briefs regarding whether a waiver of sovereign immunity—including the APA, the Tucker Act, or any other such waiver—applies to this action, and, in particular, whether (1) California is seeking "money damages" within the meaning of § 702 and (2) whether the Tucker Act "impliedly forbids" the use of § 702 in this case.

      3.  *Transfer or Dismissal*

In the event that subject-matter jurisdiction is lacking, the Court "shall, if it is in the interest of justice, transfer [the] action . . . to any other such court in which [it] could have been brought at the time it was filed." 28 U.S.C. § 1631. As such, the Court may need to transfer this action to the U.S. Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1). The propriety of doing so, of course, depends not only on the subject-matter jurisdiction of this Court, but also on the jurisdiction of the Court of Federal Claims. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1304 (Fed. Cir. 2008). Because neither party has addressed the possibility of transfer or why this

case was not brought in the Court of Federal Claims in the first place, the Court will further order that they show cause why transfer would not be proper.

**B.     California's Motion for Summary Judgment**

In addition to the Department's motion to dismiss, California has filed a three-page motion for summary judgment. *See* Dkt. 9. Before addressing that motion, however, the Court must first determine that it has jurisdiction over this case. *Scenic Am., Inc. v. United States Dep't of Transp.*, 836 F.3d 42, 48 n.2 (D.C. Cir. 2016) ("[T]he district court [must] assure itself of its jurisdiction before assessing a summary judgment motion on the merits."). The Court, accordingly, will deny California's motion without prejudice as premature until the jurisdictional issue is resolved.

## CONCLUSION

In light of the above discussion, it is hereby

**ORDERED** that the Department's Motion to Dismiss, Dkt. 7, be **DENIED**;

**FURTHER ORDERED** that California's Motion for Summary Judgment, Dkt. 9, be **DENIED** without prejudice as premature; and

**FURTHER ORDERED** that the parties **SHOW CAUSE** why this action should not be dismissed on grounds of sovereign immunity or transferred to the U.S. Court of Federal Claims. In particular, the parties shall address all of the following issues: (1) whether Congress has waived the United States's sovereign immunity to suit in this Court for the pending action, including, if California intends to rely on 5 U.S.C. § 702, whether this suit satisfies the requirements that the action seek "relief other than money damages" and not be impliedly forbidden by the Tucker Act; (2) whether the action could properly have been brought in the U.S. Court of Federal Claims; and (3) assuming that the U.S. Court of Federal Claims has exclusive

jurisdiction over this matter, whether the interest of justice favors transfer of this case to that court.  California shall file its response on or before February 8, 2017.  The Department shall file its response on or before March 10, 2017.  California may then file a reply on or before March 27, 2017.

    **SO ORDERED.**


                                              /s/ Randolph D. Moss
                                              RANDOLPH D. MOSS
                                              United States District Judge

Date:  January 9, 2017